UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| SBS TRANSPORT LLC, a Michigan limited liability company, | Case No. 1:24-cv-405 |
| Plaintiff, | Hon. |
| v. | |
| CUMMINS INC., an Indiana corporation, doing business as CUMMINS SALES AND SERVICE, | |
| Defendant. | |

**COMPLAINT AND JURY DEMAND**

Plaintiff SBS Transport LLC, by and through its counsel, for its Complaint against Defendant Cummins Inc., states as follows:

**INTRODUCTION**

1. Plaintiff SBS Transport LLC brings this action against Defendant Cummins Inc., the manufacturer, warrantor, and servicer of heavy-duty diesel engines that power several Peterbilt trucks owned and operated by Plaintiff.

2. One of Plaintiff's engines suffered a failure requiring a costly rebuild, notwithstanding that Plaintiff has performed all recommended maintenance on the engine throughout its service life.

3. Rather than repair and rebuild the engine free of charge under the terms of Plaintiff's extended warranty certificate, Defendant denied coverage on a pretextual basis, falsely

claiming that Plaintiff's engine failed because of excessive dirt and debris entering the engine during operation and claiming that this failure mode justified a denial of warranty coverage.

4. Defendant further attempted to charge Plaintiff an exorbitant amount to repair and rebuild the engine, which was necessary to resume operating the truck, and wrongfully failed and refused to honor the warranty.

5. Due to Defendant's breaches of warranty and other unlawful conduct, Plaintiff has suffered, and continues to suffer, damages including repair costs and lost profits due to the unavailability of the truck.

## THE PARTIES

6. Plaintiff SBS Transport LLC ("SBS") is a Michigan limited liability company headquartered in Grand Rapids, Kent County, Michigan. SBS is a citizen of the State of Michigan.

7. Defendant Cummins Inc. ("Cummins"), doing business as Cummins Sales and Service, is an Indiana corporation headquartered in Columbus, Indiana. Cummins is a citizen of the State of Indiana.

8. Cummins operates branch offices in the State of Michigan, including in Kent County, and otherwise conducts systematic and continuous business in the State of Michigan.

## JURISDICTION AND VENUE

9. This Court has jurisdiction under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000.00 and the parties are of diverse citizenship.

10. Venue is appropriate in this Court under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred within this District, the property

subject to the action is situated within this District, and Defendant is subject to the personal jurisdiction of this Court.

## FACTUAL ALLEGATIONS

11. In October of 2018, Plaintiff purchased a Peterbilt tractor (the "Truck") powered by an intercooled six-cylinder Cummins turbo diesel engine (the "Engine"), model number X15 CM2350 X114B, serial number 80072948, for use in Plaintiff's business.

12. Plaintiff's business consists primarily of transportation of new vehicles from their place of manufacture to dealers around the United States, using specialized, heavy-duty tractor-trailers such as the Truck.

13. Cummins designed and marketed the Engine for precisely the type of use Plaintiff has made of the Engine, i.e., to power commercial tractors and trucks that or tow or haul heavy cargo loads over long distances on the road.

14. Plaintiff purchased an extended warranty (the "Warranty") for the Engine from Cummins at the time Plaintiff purchased the Truck.

15. Plaintiff paid $5,675 for the Warranty.

16. The Warranty had a term of five years or 500,000 miles.

17. Plaintiff used the Truck to transport vehicles in the ordinary course of Plaintiff's business.

18. Plaintiff maintained the Truck and the Engine regularly as recommended by Cummins, including maintaining and replacing the particulate filters, whose purpose is to remove dust, dirt, and debris from intake air before it enters the Engine.

19. A "check engine" alert lamp in the Truck lit up during use in August of 2023.

20. In response to the "check engine" light, Plaintiff had diagnostics performed by JX Truck Center, an authorized Cummins service provider, in Lafayette, Indiana.

21. On or about August 31, 2023, JX Truck Center performed certain diagnostics on the Engine and found no excessive crankcase pressure, no clogged lines, and no leaks.

22. The repair estimate produced by JX Truck Center indicates that JX Truck Center found a damaged o-ring within the turbocharger assembly of the Engine, which is a covered component under the Warranty.

23. Unable to diagnose the problem causing the "check engine" light to illuminate, JX Truck Center contacted Cummins for assistance.

24. Cummins told JX Truck Center that the repair would not be covered by the Warranty because the failure of the Engine was due to dirt and dust ingestion.

25. The damaged turbocharger o-ring was located on the pressurized side, not the intake side, of the turbocharger assembly. This means the damaged o-ring could have resulted in decreased air pressure entering the Engine and reduced power due to pressurized air leaking out, but could not have caused dust or dirt to be ingested into the Engine.

26. SBS employees observed the Engine making an abnormal noise during operation in September of 2023, which Plaintiff's employees speculated may have been caused by one or more misfiring cylinders.

27. At the time the Engine started making this noise, the Warranty remained in effect, as neither its five-year term nor its maximum mileage of 500,000 had been reached.

28. On or before October 9, 2023, Plaintiff took the Truck to Cummins's Clay Avenue location in Grand Rapids for inspection, diagnosis, and service of the Engine.

29. Upon information and belief, on October 9, 2023, Cummins observed the Engine making the abnormal noise during operation and agreed with Plaintiff's assessment that diagnostics and repair were needed.

30. Upon information and belief, on October 9 and/or 10 of 2023, Cummins read the electronic error codes recorded by the Engine's computer and noted "excessive crankcase pressure" within the Engine.

31. Cummins removed and disassembled the Engine on October 9 and/or 10 of 2023.

32. Cummins observed damage to certain internal components of the Engine, including broken piston rings on one of the six pistons and damage to the engine head.

33. Cummins found no evidence pointing to any maintenance failure by Plaintiff—including those that could cause excessive dirt or debris to enter the Engine—as a cause of the Engine's failure.

34. Cummins communicated to Plaintiff on October 10, 2023 that a complete overhaul of the Engine was necessary, as well as replacement of the cylinder head, turbocharger, air compressor, and charge air cooler.

35. Cummins quoted a price for parts and labor for the overhaul of $48,868.91.

36. By its terms, the Warranty covers the "Piston Group," "Piston Ring Group," "Cylinder Head Assembly," "Turbo Assembly," and other components of the Engine that Cummins proposed to replace.

37. Although the damage to the Engine was not consistent with excessive dirt or debris entering the Engine through the fault of Plaintiff, Cummins told Plaintiff that excessive dirt or debris was the cause of the Engine's failure and that the necessary repairs to the Engine would not be covered by the Warranty as a result.

38. Cummins's own 2020 Service Bulletin describes the hallmarks of engine damage caused by "dirt and dust ingestion," which include "[e]xcessive lubricating oil dripping and/or noticeable combustion gases from the draft tube," "[a] sudden increased rate of lubricating oil consumption," and "[e]ngine low power."

39. The 2020 Service Bulletin regarding dirt and dust ingestion specified that to remedy a resulting engine failure, the cylinder head, turbocharger, charge air cooler, and air compressor should be replaced.

40. The Engine displayed none of the hallmarks of engine damage caused by "dirt and dust ingestion" as described in the 2020 Service Bulletin; i.e., there was no excessive lubricating oil dripping, no noticeable combustion gases from the draft tube, no increased rate of lubricating oil consumption, and no low engine power as tested using Cummins's dynamometer.

41. Further, a "dusted" engine—an engine whose failure is caused by excess dirt and dust ingestion—is characterized by evident dirt in and damage to all cylinders.

42. The Engine did not have dirt in and damage to all cylinders. Only one of the six cylinders, and the piston assembly within that cylinder, showed damage in the Engine.

43. Cummins diagnosed the failure of the Engine as "dirt and dust ingestion" as a pretext to avoid compliance with the Warranty, which would have been costly for Cummins because the Engine required significant labor and expensive parts to repair.

44. Upon information and belief, Cummins has similarly denied warranty coverage to numerous other commercial fleet owners by misdiagnosing engine failures as resulting from "dirt and dust ingestion."

45. After Plaintiff communicated skepticism to Cummins about the diagnosis and denial of Warranty coverage, Cummins altered its estimate for repair of the Engine to $27,388.26,

6

omitting from the proposed repairs replacement of the cylinder head, turbocharger, charge air cooler, air compressor, and several other components that, according to the 2020 Service Bulletin, would need to be replaced in the event of dirt and dust ingestion causing an engine failure.

46. When Plaintiff questioned Cummins about the inconsistencies between the new quote for repairs and the 2020 Service Bulletin, Cummins responded that the "mode of failure" "cannot be covered by the extended certificate" and that "[t]he diagnosis of a piston ring failure due to foreign object debris intrusion has not changed and will not change."

47. Cummins could not explain why it revised its proposed service to the Engine to exclude replacement of the components identified in the 2020 Service Bulletin.

48. Cummins failed and refused to repair the Engine under the terms of the Warranty.

49. An independent expert has inspected the Engine and found that its condition was not consistent with Cummins's diagnosis that its failure was caused by dirt and dust ingestion.

50. Plaintiff engaged a qualified independent repair shop to make the necessary repairs to the Engine at a cost of approximately $50,000.00.

51. To mitigate its lost profit damages, while the repairs to the Engine were being made, Plaintiff had a temporary replacement engine installed in the Truck at a cost of approximately $35,000.00.

52. Due to Cummins's failure to honor the Warranty and other violations of law, the Truck was out of service for a period of five months, causing losses to Plaintiff totaling approximately $120,000.00.

## COUNT I

### Motor Vehicle Service and Repair Act ("MVSRA")

53. Plaintiff incorporates the previous paragraphs by reference.

54. Plaintiff is a "customer" as that term is defined in MVSRA, MCL 257.1302(i) because it owns and operates the Truck.

55. The Truck is a "motor vehicle" as that term is defined in MVSRA, MCL 257.1302a(f) because it is a vehicle that is self-propelled.

56. Cummins is a "facility" and "motor vehicle repair facility" as that term is defined in MVSRA, MCL 257.1302(m) because it performs maintenance, diagnosis, and repair service on motor vehicles.

57. MVSRA prohibits making an untrue or misleading statement of a material fact to a customer, MCL 257.1307(d).

58. MVSRA prohibits failing to reveal a material fact to a customer that the customer could not reasonably know if that omission tends to mislead or deceive the customer, MCL 257.1307(e).

59. MVSRA prohibits representing that repairs are necessary when in fact they are not, MCL 257.1307a(c).

60. MVSRA prohibits failing to honor an express warranty, MCL 257.1307b(d).

61. Cummins violated MVSRA.

62. Plaintiff suffered damages as a result of Cummins's MVSRA violations.

63. Cummins's violations of MVSRA were willful.

WHEREFORE, Plaintiff SBS Transport LLC requests that this Court enter judgment against Defendant Cummins Inc. providing the following relief:

a. Actual damages in an amount to be proved at trial;

   b. Costs and reasonable attorney fees pursuant to MCL 257.1336;

   c. Double damages to the extent Cummins committed a willful violation of MVSRA, MCL 257.1336; and

   d. Such further legal and equitable relief as the Court deems just.

## COUNT II

### Breach of Warranty

64. Plaintiff incorporates the preceding paragraphs by reference.

65. The Warranty constitutes a contract between Plaintiff and Cummins.

66. The Warranty required Cummins to perform service to remedy the failure of the Engine at no charge to Plaintiff.

67. Cummins failed and refused to perform service to remedy the failure of the Engine at no charge to Plaintiff.

68. Plaintiff has been damaged by Cummins's failure and refusal to honor the Warranty.

WHEREFORE, Plaintiff SBS Transport LLC requests that this Court enter judgment against Defendant Cummins Inc. providing the following relief:

   a. Actual damages in an amount to be proved at trial; and

   b. Such further legal and equitable relief as the Court deems just.

|  |  |
|--|--|
| | Respectfully submitted, |
| Dated: April 21, 2024 | /s/ Theodore J. Westbrook |
| | Theodore J. Westbrook (P70834) |
| | **Westbrook Law PLLC** |
| | Attorney for Plaintiff |
| | Centennial Plaza, Suite 205 |
| | 2851 Charlevoix Dr. SE |
| | (616) 288-9548 |
| | ted@westbrook.law |

## JURY DEMAND

Plaintiff SBS Transport LLC hereby demands a trial by jury as to all claims and issues so triable.

Dated: April 21, 2024

/s/ Theodore J. Westbrook
Theodore J. Westbrook (P70834)
**Westbrook Law PLLC**
Attorney for Plaintiff
Centennial Plaza, Suite 205
2851 Charlevoix Dr. SE
(616) 288-9548
ted@westbrook.law