UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SBS TRANSPORT LLC, a Michigan
limited liability company,

       Plaintiff,

v.

CUMMINS INC., an Indiana corporation,
doing business as CUMMINS SALES AND
SERVICE,

       Defendant.

Case No. 1:24-cv-405

Hon. Robert J. Jonker

**FIRST AMENDED COMPLAINT AND JURY DEMAND**

Plaintiff SBS Transport LLC, by and through its counsel, for its First Amended Complaint against Defendant Cummins Inc., states as follows:

**INTRODUCTION**

1.      Plaintiff SBS Transport LLC brings this action against Defendant Cummins Inc. ("Cummins"), the manufacturer, warrantor, and servicer of heavy-duty diesel engines that power several Peterbilt trucks owned and operated by Plaintiff.

2.      Plaintiff is the owner of two factory-installed Cummins X15 engines which have failed and become inoperative during the extended warranty coverage period for those engines.

3.      Upon information and belief, one or more design or manufacturing flaws with the X15 engine caused them to be susceptible to the failures Plaintiff experienced with its X15 engines, i.e., broken piston rings in the rearmost cylinders of each engine and resulting loss of compression.

4.      Cummins has denied warranty coverage for Plaintiff's X15 engines, falsely asserting that their failure was due to "excessive dirt and dust ingestion" and that any necessary repairs were therefore not covered under warranty.

5.      Cummins has engaged and is engaged in a practice of denying warranty coverage for X15 engines with the same failure characteristics as Plaintiff's X15 engines.

6.      Cummins has instructed its own repair facilities and those authorized to service and repair its engines under warranty that X15 engines with the same failure mode as Plaintiff's X15 engines must be extensively rebuilt as would be required if their failure were caused by "excessive dirt and dust ingestion," also known as "dusting," despite that much less extensive repairs were in fact needed.

7.      Rather than repair and rebuild Plaintiff's X15 engines free of charge under the terms of Plaintiff's extended warranty certificates, Cummins denied coverage on a pretextual basis, falsely claiming that Plaintiff's engines failed because of excessive dirt and debris entering the engine during operation and claiming that this failure mode justified a denial of warranty coverage.

8.      On two occasions, Cummins instructed an authorized engine service provider that Plaintiff's X15 engines required extensive rebuilds due to "excessive dirt and dust ingestion," when in fact less extensive repairs would have been sufficient to restore the engines' operability.

9.      Cummins itself attempted to charge Plaintiff an exorbitant amount to repair and rebuild the first of the engines to fail and wrongfully failed and refused to honor the warranty.

10.     Due to Cummins's breaches of warranty and other unlawful conduct, Plaintiff has suffered, and continues to suffer, damages including repair costs and lost profits due to the unavailability of two of its trucks.

11.     Upon information and belief, Cummins's misrepresentations concerning the cause of X15 engine failures and its denials of warranty coverage are part of an unlawful pattern and practice affecting hundreds of end-users like Plaintiff from 2016 to present.

## THE PARTIES

12.     Plaintiff SBS Transport LLC ("SBS") is a Michigan limited liability company headquartered in Grand Rapids, Kent County, Michigan.

13.     The members of SBS are Marko Franovic and Diana Franovic, both of whom reside in and are citizens of the State of Michigan.

14.     SBS is a citizen of the State of Michigan.

15.     Defendant Cummins Inc. ("Cummins"), which also does business as Cummins Sales and Service, is an Indiana corporation headquartered in Columbus, Indiana. Cummins is a citizen of the State of Indiana.

16.     Cummins operates branch offices in the State of Michigan, including in Kent County, and otherwise conducts systematic and continuous business in the State of Michigan.

## JURISDICTION AND VENUE

17.     This Court has subject-matter jurisdiction under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000.00 and the parties are of diverse citizenship.

18.     Venue is appropriate in this Court under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred within this District, the property subject to the action is situated within this District, and Defendant is subject to the personal jurisdiction of this Court.

## FACTUAL ALLEGATIONS

19.     In October of 2018, Plaintiff purchased a Peterbilt tractor (the "First Truck") powered by an intercooled six-cylinder Cummins turbo diesel engine (the "First Engine"), model number X15 CM2350 X114B, serial number 80072948, for use in Plaintiff's business.

20.     Plaintiff's business consists primarily of transportation of new vehicles from their place of manufacture to dealers around the United States, using specialized, heavy-duty tractor-trailers such as the First Truck.

21.     Cummins designed and marketed the X15 engine for precisely the type of use Plaintiff has made of the First Engine, i.e., to power commercial tractors and trucks that or tow or haul heavy cargo loads over long distances on the road.

22.     Plaintiff purchased an extended warranty provided by Cummins (the "First Warranty") for the First Engine at the time Plaintiff purchased the First Truck.

23.     Plaintiff paid $5,675 for the First Warranty.

24.     The First Warranty had a term of five years or 500,000 miles.

25.     Plaintiff used the First Truck to transport vehicles in the ordinary course of Plaintiff's business.

26.     Plaintiff maintained the First Truck and the First Engine regularly as recommended by Peterbilt and Cummins, including maintaining and replacing the particulate filters, whose purpose is to prevent dust, dirt, and debris from entering the engine through its air intake system.

27.     In December of 2019, Plaintiff purchased a Peterbilt tractor (the "Second Truck") powered by an intercooled six-cylinder Cummins turbo diesel engine (the "Second Engine"), model number X15-X1 CM2350, serial number 80205972, for use in Plaintiff's business.

4

28.    Cummins designed and marketed the X15 engine for precisely the type of use Plaintiff has made of the Second Engine, i.e., to power commercial tractors and trucks that or tow or haul heavy cargo loads over long distances on the road.

29.    Plaintiff purchased an extended warranty (the "Second Warranty") provided by Cummins for the Second Engine at the time Plaintiff purchased the Second Truck.

30.    Plaintiff paid $5,935.00 for the Second Warranty.

31.    The Second Warranty had a term of five years or 500,000 miles.

32.    Plaintiff used the Second Truck to transport vehicles in the ordinary course of Plaintiff's business.

33.    A "check engine" alert lamp in the First Truck lit up during use in August of 2023.

34.    In response to the "check engine" light, Plaintiff had diagnostics performed by JX Truck Center, an authorized Cummins service provider, in Lafayette, Indiana.

35.    On or about August 31, 2023, JX Truck Center performed diagnostics on the Engine and found no excessive crankcase pressure, no clogged lines, and no leaks.

36.    The repair estimate produced by JX Truck Center indicates that JX Truck Center found a damaged o-ring within the turbocharger assembly of the First Engine, which is a covered component under the First Warranty.

37.    Unable to diagnose the problem causing the "check engine" light to illuminate, JX Truck Center contacted Cummins for assistance.

38.    Cummins told JX Truck Center that the repair would not be covered by the First Warranty because the failure of the First Engine was due to excessive dirt and dust ingestion.

39.    The damaged turbocharger o-ring was located on the pressurized side, not the intake side, of the turbocharger assembly. This means the damaged o-ring could have resulted in

5

decreased air pressure entering the First Engine and reduced power due to pressurized air leaking out, but could not have caused mechanically significant dust or dirt to be ingested into the First Engine.

40.    SBS employees observed the First Engine making an abnormal noise during operation in September of 2023, which Plaintiff's employees speculated may have been caused by one or more misfiring cylinders.

41.    At the time the First Engine started making this noise, the First Warranty remained in effect, as neither its five-year term nor its maximum mileage of 500,000 had been reached.

42.    On or before October 9, 2023, Plaintiff took the Truck to Cummins's Clay Avenue location in Grand Rapids, Michigan for inspection, diagnosis, and service of the First Engine.

43.    On or about October 9, 2023, Cummins observed the First Engine making the abnormal noise during operation and agreed with Plaintiff's assessment that diagnostics and repair were needed.

44.    Upon information and belief, on October 9 and/or 10 of 2023, Cummins read the electronic error codes recorded by the First Engine's computer and noted "excessive crankcase pressure" within the First Engine.

45.    Cummins removed and disassembled the First Engine on October 9 and/or 10 of 2023.

46.    Cummins observed damage to internal components of the First Engine, including broken piston rings on the rearmost of the six pistons and damage to the engine head consistent with failure of the piston rings.

6

47.    Cummins found no evidence pointing to any maintenance failure by Plaintiff—including those that could cause excessive dirt or debris to enter the First Engine—as a cause of the First Engine's failure.

48.    Cummins communicated to Plaintiff on October 10, 2023 that a complete overhaul of the First Engine was necessary, as well as replacement of the cylinder head, turbocharger, air compressor, and charge air cooler.

49.    Cummins quoted a price for parts and labor for the overhaul of $48,868.91.

50.    By its terms, the First Warranty covers the "Piston Group," "Piston Ring Group," "Cylinder Head Assembly," "Turbo Assembly," and other components of the First Engine that Cummins proposed to replace.

51.    Although the damage to the First Engine was not consistent with excessive dirt or debris entering the First Engine, Cummins told Plaintiff that excessive dirt or debris was the cause of the First Engine's failure and that the necessary repairs to the First Engine would not be covered by the First Warranty as a result.

52.    Cummins's own 2020 Service Bulletin describes the hallmarks of engine damage caused by "dirt and dust ingestion," which include "[e]xcessive lubricating oil dripping and/or noticeable combustion gases from the draft tube," "[a] sudden increased rate of lubricating oil consumption," and "[e]ngine low power."

53.    The 2020 Service Bulletin regarding dirt and dust ingestion specified that to remedy a resulting engine failure, the cylinder head, turbocharger, charge air cooler, and air compressor should be replaced.

54.    The First Engine displayed none of the hallmarks of engine damage caused by "dirt and dust ingestion" as described in the 2020 Service Bulletin; i.e., there was no excessive lubricating

7

oil dripping, no noticeable combustion gases from the draft tube, no sudden increased rate of lubricating oil consumption, and no low engine power as tested using Cummins's dynamometer.

55.    Further, a "dusted" engine—an engine whose failure is caused by excess dirt and dust ingestion—is characterized by evident, significant dirt, dust or sand within the air intake system for the engine and characteristic wear and damage patterns within each engine cylinder.

56.    It is normal and not indicative of damage or faults in the air intake system and/or filters for the interior of air intake systems in trucks fitted with X15 engines to show traces of fine dust or soot after normal operation.

57.    Traces of fine dust or soot within air intake systems in trucks fitted with X15 engines are insufficient to diagnose an engine failure as resulting from "dusting."

58.    The First Engine did not have significant dirt, dust, or sand within the air intake system and did not have damage to all cylinders. Only one of the six cylinders, and the piston assembly within that cylinder, showed damage in the First Engine.

59.    Cummins diagnosed the failure of the First Engine as "dirt and dust ingestion" as a pretext to avoid compliance with the First Warranty, which would have been costly for Cummins because the First Engine required significant labor and expensive parts to repair.

60.    After Plaintiff communicated skepticism to Cummins about the diagnosis and denial of warranty coverage, Cummins altered its estimate for repair of the First Engine to $27,388.26, omitting from the proposed repairs replacement of the cylinder head, turbocharger, charge air cooler, air compressor, and several other components that, according to the 2020 Service Bulletin, would need to be replaced in the event of dirt and dust ingestion causing an engine failure.

61.    When Plaintiff questioned Cummins about the inconsistencies between the new quote for repairs and the 2020 Service Bulletin, Cummins responded that the "mode of failure"

8

"cannot be covered by the extended certificate" and that "[t]he diagnosis of a piston ring failure due to foreign object debris intrusion has not changed and will not change."

62.    Cummins could not explain why it revised its proposed service to the First Engine to exclude replacement of the components identified in the 2020 Service Bulletin and that would have been required if the failure were caused by "dusting."

63.    Cummins failed and refused to repair the First Engine under the terms of the First Warranty.

64.    An independent expert has inspected the First Engine and found that its condition was not consistent with Cummins's diagnosis that its failure was caused by dirt and dust ingestion.

65.    Plaintiff engaged a qualified independent repair shop to make the necessary repairs to the Engine at a cost of approximately $50,000.00.

66.    To mitigate its lost profit damages, while the repairs to the First Engine were being made, Plaintiff had a temporary replacement engine installed in the First Truck at a cost of approximately $35,000.00.

67.    Due to Cummins's failure to honor the First Warranty and other violations of law, the Truck was out of service for a period of five months, causing losses to Plaintiff totaling approximately $120,000.00.

68.    Plaintiff maintained the Second Truck and Second Engine as recommended by their manufacturers, including maintaining the air filtration components designed to keep external dust, sand, and dirt from reaching and damaging internal engine components.

69.    In late October of 2024, engine warning lamps illuminated in the Second Truck.

70.    At the time the engine warning lamps illuminated, the Second Truck had approximately 480,000 miles on it and the Second Warranty remained in effect.

9

71.      Plaintiff brought the Second Truck to JX Truck Center in Grand Rapids, Michigan for diagnostics.

72.      JX Truck Center's inspection revealed no significant dirt, sand, or dust in the engine air intake system of the Second Engine.

73.      The traces of dust JX Truck Center found within the air intake system of the Second Engine are consistent with deposits of soot due to the operation of the exhaust gas recirculation ("EGR") system that is integral to the Second Engine.

74.      JX Truck Center input the results of its inspection and diagnostics into an electronic system monitored by Cummins, which in turn indicated that the failure of the Second Engine was caused by "dusting," i.e., excessive dirt and dust ingestion, and that any repairs would not be covered under the terms of the Second Warranty.

75.      Like the First Engine, the Second Engine did not have significant dirt, dust, or sand within the air intake system and did not have damage to all cylinders. Only one of the six cylinders, and the piston assembly within that cylinder, showed damage in the Second Engine.

76.      According to Cummins guidelines, a diagnosis of a "dusted" engine requires an extensive rebuild and replacement of, among other components, the turbocharger and air compressor.

77.      Using Cummins's guidelines for repair of "dusted" engines, JX Truck Center quoted Plaintiff a cost of over $40,000.00 to repair the Second Engine.

78.      JX Truck Center, which provides warranty service work for Cummins engines and has serviced numerous Cummins X15 engines manufactured from 2016 to present, did not conclude and does not believe the failure of the Second Engine was in fact due to "dusting."

10

79. JX Truck Center is affiliated with PACCAR, Inc. ("PACAAR"), whose subsidiaries include commercial truck manufacturers Kenworth and Peterbilt.

80. PACCAR is a manufacturer of heavy diesel motors for use in on-road tractors and is a competitor of Cummins in that marketplace.

81. Kenworth and Peterbilt tractors are available with factory-installed motors manufactured by PACCAR and are also available with factory-installed motors manufactured by Cummins.

82. In Kenworth and Peterbilt tractors with Cummins engines, as well as with PACCAR engines, PACCAR manufactures or otherwise sources the components that supply outside air required for combustion and power production within the engine.

83. In heavy-duty turbo diesel engines such as the Cummins X15 and PACCAR MX-13, among many others, intake air for combustion first enters through one or more particulate filters before traveling through an intake tube to the turbocharger.

84. In X15 engines, the turbocharger is a Cummins component; i.e., it is manufactured or sourced by Cummins and installed by Cummins before the engine is supplied to the vehicle manufacturer.

85. Cummins warranties and certificates, including those applicable to the First Engine and Second Engine, apply to each component that handles engine intake air from the turbocharger, through the system that cools the intake air (called a "charge air cooler," "CAC," or "intercooler"), and through the intake manifold that supplies air for combustion into the engine cylinders.

86. Cummins also manufactures or sources an exhaust gas recirculation ("EGR") system that it installs into X15 engines before supplying the engines to vehicle manufacturers.

11

87.     The EGR system, which recirculates exhaust gases through the engine, can be a source of soot and dust entering the engine cylinders.

88.     The EGR system can also be a source of soot and dust flowing backward into the turbocharger and intake tube, which can lead to minor deposits of soot and dust in the intake tube during normal operation.

89.     For an X15 engine to fail due to excessive dirt, dust, or sand ingestion that does not originate from a Cummins component, the dirt, dust, or sand must originate from failed or missing air filter(s) or intake tube, or the boots, clamps, or seals that connect these components to each other or to the turbocharger.

90.     JX Truck Center services tractors with PACCAR, Cummins, and Caterpillar diesel engines and is an authorized provider of warranty services for end users of each brand.

91.     Engine failures due to "dusting," i.e., excessive dirt and dust ingestion into the engine combustion chambers, are extremely uncommon in vehicles used primarily on paved roads like the First Truck and the Second Truck.

92.     JX Truck Center has observed repeated instances of Cummins claiming an X15 engine in a road-going vehicle is "dusted" and not eligible for warranty repairs when no failed or missing air filter(s) or intake tube, or the boots, clamps, or seals that connect these components to each other or to the turbocharger exists.

93.     PACAAR has repeatedly objected to Cummins's characterization of failed or damaged X15 engines as "dusted," because such characterization effectively blames components manufactured and/or installed by PACAAR or its subsidiaries for engine failures and deprives end users of PACAAR, Kenworth, and Peterbilt products of the benefits of warranty coverage provided by Cummins.

12

94.     Upon information and belief, PACAAR has communicated to Cummins its conclusion that X15 engine failures Cummins routinely diagnoses as due to "dusting" are in fact caused by one or more design defects with the X15 engine that cause(s) piston rings in the rearmost cylinder of X15 engines to break, damage the cylinder and other engine components, and lead to compression loss and other problems with engine functioning.

95.     Since Plaintiff purchased the Second Truck, Cummins has changed the part numbers for piston rings used in the X15 engine.

96.     Cummins's change of part numbers for piston rings used in the X15 engine suggests that Cummins: (1) was aware that its piston rings were failing prematurely in X15 engines, and (2) redesigned or otherwise altered the piston rings to resist premature failure.

97.     Cummins's refusal to honor its warranties and extended coverage certificates based on "dusting" of X15 engines is intentional and wrongful.

## CLASS ALLEGATIONS

98.     Pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3), Plaintiff brings this action individually and on behalf of a class or classes of similarly situated persons.

99.     Plaintiff proposes two classes:

1. **NATIONWIDE CLASS**

    Each person and legal entity which owns or owned a Kenworth or Peterbilt tractor or truck designed for on-road use in which a Cummins X15 motor was factory installed from 2016 to present and: (a) within the last six (6) years, the motor was serviced within the United States by Cummins or a provider authorized by Cummins (together "Provider") to perform warranty repairs; (b) Cummins asserted that the engine required repairs or a rebuild due to "dusting" or excessive dirt, dust,

13

and/or debris entering the engine; (c) Cummins denied coverage under a warranty or extended repair certificate based on "dusting" or excessive dirt, dust, and/or debris entering the engine; and (d) the diagnostics provided by the Provider to Cummins did not note the presence of damage to all cylinders.

### 2.  MICHIGAN CLASS

Each person and legal entity which owns or owned a Kenworth or Peterbilt tractor or truck designed for on-road use in which a Cummins X15 motor was factory installed from 2016 to present and: (a) within the last six (6) years, the motor was serviced within the State of Michigan by Cummins; (b) Cummins asserted that the engine required repairs or a rebuild due to "dusting" or excessive dirt, dust, and/or debris entering the engine; (c) Cummins denied coverage under a warranty or extended repair certificate based on "dusting" or excessive dirt, dust, and/or debris entering the engine; and (d) the diagnostics performed by Cummins did not note the presence of damage to all cylinders.

100.   Each class includes more than 50 members.

101.   The members of each class are so numerous that joinder of all members is impracticable.

102.   There are questions of law and fact common to all members of each class, which common questions predominate over any questions that affect only individual class members. The predominant questions are:

    a.   Whether Cummins misrepresented that the cause of damage to and failure of X15 engines was "dusting;"

b. Whether Cummins misrepresented that warranty or certificate coverage was unavailable for damaged and failed X15 engines due to "dusting;" and

c. Whether Cummins breached the terms of express warranties and certificates covering damaged X15 engine components by refusing to cover repairs based on the pretext of "dusting."

103. Additional predominant questions with respect to the Michigan Class include:

a. Whether Cummins made untrue or misleading statements of fact to customers in connection with servicing of X15 engines;

b. Whether Cummins represented to class members that repairs were needed which were not needed; and

c. Whether Cummins's violations of the Michigan Motor Vehicle Service and Repair Act were willful or intentional.

104. Plaintiff's claims are typical of the claims of all class members. Plaintiff's claims and the claims of all class members are based on the same factual and legal theories. Moreover, Plaintiff and all class members have suffered the same or similar injury, loss, and damage, which were caused by Cummins's uniform practices of using false and misleading representations as to the cause of engine damage, the availability of warranty or certificate coverage, and the extent of repairs required to remedy the damage.

105. Plaintiff and the class members have suffered similar injuries as a result of Cummins's unlawful practices, including excessive repair costs.

106. Plaintiff will fairly and adequately protect and represent the interests of the members of each class. Plaintiff has retained counsel experienced in representing classes of plaintiffs and in business litigation. Neither Plaintiff nor counsel have any interests that are adverse

15

or inconsistent with the interest of the members of any class. Neither Plaintiff nor counsel have any interests that would cause them not to vigorously represent the interest of the members of each class and pursue this action.

107.    Certification of the proposed classes under Federal Rule of Civil Procedure 23(b)(3) is appropriate in that:

a.  The questions of law or fact common to the members of the classes predominate over any questions affecting only individual members;

b.  A class action is superior to the other available methods for fairly and efficiently adjudicating the controversy. Specifically:

   i.  There is no compelling interest in having each member individually controlling the prosecution of separate actions. Many class members may not realize their rights have been violated;

   ii.  Common relief is sought on behalf of all members of each class. The prosecution of separate actions by individual members of each class would create a risk of inconsistent or varying adjudications with respect to the individual members of each lass, and a risk that any adjudications with respect to individual members of each class would, as a practical matter, either be dispositive of the interests of other members of each class not party to the adjudication, or substantially impair or impede their ability to protect their interests;

   iii.  Plaintiff's counsel has searched PACER and otherwise is unaware of any pending litigation filed on behalf of any putative class member against Cummins relating to the subject matter of this First Amended Complaint;

16

iv.  It is desirable to concentrate the litigation of the claims in this forum. Piecemeal litigation in varying forums would create the risk of inconsistent decisions. Further, Cummins conducts substantial business in the State of Michigan and many class members, including most members of the Michigan Class, are located within the State of Michigan;

v.  The management of the proposed class action will not be unusually difficult. The factual and legal issues raised by this class action complaint will not require extended contact with the members of each class. Cummins's violations of the law and a major category of damages—excessive repair costs—can be determined through review of documents Cummins maintains in its possession, custody, or control.

108.  Class membership is based on objective, readily ascertainable criteria that can be derived from documents Cummins maintains in its possession, custody, or control, and it is administratively feasible for the court to determine whether a particular person or entity is a class member.

## CLAIMS FOR RELIEF

### COUNT I – Motor Vehicle Service and Repair Act ("MVSRA")

### Plaintiff and Michigan Class

109.  Plaintiff incorporates the previous paragraphs by reference.

110.  Plaintiff is a "customer" as that term is defined in MVSRA, MCL 257.1302(i) because it owns and operates the First Truck and Second Truck.

111.  Each Michigan Class member is likewise a "customer" because it owned and operated a truck with a factory-installed X15 engine.

17

112.    The First Truck and Second Truck, and the X15-equipped trucks of each Michigan Class member, are each a "motor vehicle" as that term is defined in MVSRA, MCL 257.1302a(f) because each is a vehicle that is self-propelled.

113.    Cummins is a "facility" and "motor vehicle repair facility" as that term is defined in MVSRA, MCL 257.1302(m) because it performs maintenance, diagnosis, and repair service on motor vehicles.

114.    MVSRA prohibits making an untrue or misleading statement of a material fact to a customer, MCL 257.1307(d).

115.    MVSRA prohibits failing to reveal a material fact to a customer that the customer could not reasonably know if that omission tends to mislead or deceive the customer, MCL 257.1307(e).

116.    MVSRA prohibits representing that repairs are necessary when in fact they are not, MCL 257.1307a(c).

117.    MVSRA prohibits failing to honor an express warranty, MCL 257.1307b(d).

118.    Cummins violated MVSRA.

119.    Plaintiff and each similarly situated person suffered damages as a result of Cummins's MVSRA violations.

120.    Cummins's violations of MVSRA were willful.

WHEREFORE, Plaintiff SBS Transport LLC, individually and on behalf of all others similarly situated, requests that this Court enter judgment against Defendant Cummins Inc. providing the following relief:

    a.    Actual damages for Plaintiff and each member of the Michigan Class;

    b.    Costs and reasonable attorney fees pursuant to MCL 257.1336;

c. Double damages to the extent Cummins's violations of MVSRA were willful, MCL 257.1336; and

d. Such further legal and equitable relief as the Court deems just.

## COUNT II – Breach of Warranty

### Plaintiff and National Class

121. Plaintiff incorporates the preceding paragraphs by reference.

122. Each warranty covering an X15 engine, including the First Warranty and Second Warranty, constitutes a contract between Cummins and the respective user.

123. The X15 warranties required Cummins to perform service to remedy the failure of the covered engine at no charge to the owner.

124. Cummins failed and refused to perform service to remedy the failure of the X15 engines at issue.

125. Plaintiff and each member of the class have been damaged by Cummins's failure and refusal to honor the respective warranties.

WHEREFORE, Plaintiff SBS Transport LLC, individually and on behalf of all others similarly situated, requests that this Court enter judgment against Defendant Cummins Inc. providing the following relief:

a. Actual damages for Plaintiff and each member of each class; and

b. Such further legal and equitable relief as the Court deems just.

19

Respectfully submitted,

Dated: December 12, 2024

/s/ Theodore J. Westbrook
Theodore J. Westbrook (P70834)
**Westbrook Law PLLC**
Attorney for Plaintiff
Centennial Plaza, Suite 205
2851 Charlevoix Dr. SE
(616) 288-9548
ted@westbrook.law

20

## JURY DEMAND

Plaintiff SBS Transport LLC demands a trial by jury as to all claims and issues so triable.

Respectfully submitted,

Dated: December 12, 2024

/s/ Theodore J. Westbrook
Theodore J. Westbrook (P70834)
**Westbrook Law PLLC**
Attorney for Plaintiff
Centennial Plaza, Suite 205
2851 Charlevoix Dr. SE
(616) 288-9548
ted@westbrook.law

21